MILDRED MERRIMON v. THE POSTAL TELEGRAPH-CABLE COMPANY.

(Filed 10 October, 1934.)

**1. Torts C e—General release of all claims existing at time of execution of the release is binding in absence of fraud or mistake.**

Plaintiff, having asserted a claim against defendant, signed a release for the claim asserted, and for "all claims of every nature, kind and description, which I have . . . up to and including the date of this release." Thereafter plaintiff instituted this action upon a claim existing, to her knowledge, at the time of the execution of the release, but based upon an unrelated cause of action: *Held,* in the absence of fraud or mistake, plaintiff is bound by the terms of the release, which are sufficiently broad to include the cause of action sued on, the plaintiff having signed the release after full consideration of its contents at a time when she knew all the facts, and the release being supported by consideration.

**2. Appeal and Error J g—**

Where the rights of the parties are determined by the decision of the court upon one of the assignments of error, questions presented by other assignments of error need not be considered.

SCHENCK, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Schenck, J.,* at March Term, 1934, of BUNCOMBE. Reversed.

This action was begun in the general county court of Buncombe County on 2 December, 1932, and was tried at September Term, 1933, of said court.

In her complaint the plaintiff alleges:

"2. That during the month of December, 1930, and prior thereto, the plaintiff was employed in the office of the defendant in the city of Ocala, Florida, to do general office work, including stenography, typewriting, and other general work.

"3. That the defendant carries on a general telegraph business, receiving and sending messages for hire, with offices distributed throughout the country, and has a general office and place of business with agents and representatives located at Asheville, N. C.

"4. That it is and was at the time of the matters and things herein complained of the duty of the defendant to furnish to its employees a reasonably safe and suitable place in which to work, and particularly to furnish this plaintiff and her co-employees an adequately heated room or place in which to perform her duties, but notwithstanding said duty, which defendant owed to the plaintiff, the defendant carelessly, negligently and wantonly failed and refused to provide necessary heat for the offices and rooms in which this plaintiff was required to work, although this plaintiff repeatedly, from time to time, complained to defendant through its agents and representatives, and demanded that her said office be properly heated.

"5. That notwithstanding the repeated requests and demands of this plaintiff to the defendant for proper heating facilities, and notwithstanding the fact that the winter of 1930 was excessively cold, all of which facts were repeatedly brought to the attention of the defendant, the defendant persisted in its refusal to furnish sufficient appliances and accommodations to properly heat the offices, and this plaintiff was required to work in an excessively cold room, wherein the atmosphere was in a cold, damp and chilly condition, and was likely to cause the occupants thereof to suffer intensely from the cold and to expose this plaintiff to the ills incident to the cold and damp condition in said room, and by reason of the conditions as herein set forth, and by reason of the defendant's negligent, careless and wanton failure to provide adequate heating facilities, although repeatedly requested to do so, this plaintiff was exposed to the extreme cold as herein set forth, and her health was greatly impaired as hereinafter set forth.

"6. That this plaintiff was so persistent in her demands on the defendant to furnish adequate heating appliances that the defendant eventually, after this plaintiff had suffered intensely from her exposure as herein set forth, installed a gas heater in this plaintiff's room, but when this plaintiff would ignite the gas in order to provide sufficient heat, the manager and agent of the defendant under whom this plaintiff was required to work repeatedly and continuously turned off said heater, and refused to allow this plaintiff to use said heater a sufficient length of

time to heat the room, although repeatedly requested by this plaintiff to allow the plaintiff to use said heater, and by reason of the matters and things herein complained of this plaintiff was required to work under such hazardous conditions that her health became impaired, she developing a severe cold which settled in her back, side and neck, and greatly injured her nervous system, causing her to suffer great pain and mental anguish, causing a condition of neuritis to set up in her neck, side and shoulder; that her condition became so run-down, her nerves upset, that she was compelled to discontinue her services, resign her position with the defendant, and seek medical treatment, all of which cost her large sums of money for doctors' bills and medical expenses, and since said time, due solely and proximately to the negligence as herein set forth, this plaintiff's earning capacity has been greatly reduced, and she is now wholly unable to perform any duties pertaining to her livelihood, and as she is advised and believes she is permanently disabled, all by reason of the careless, negligent and wanton manner in which the defendant failed and refused to furnish the plaintiff with an adequately heated room, and wantonly and maliciously turned off the heater eventually furnished in said room, although repeated demands were made on the defendant, the condition of the room having been repeatedly brought to the attention of the defendant.

"7. That prior to the exposure to which this plaintiff was subjected by reason of the negligence of the defendant as herein set forth, the plaintiff was a strong, healthy, able-bodied person, but now by reason of the wanton, wilful and negligent failure and refusal of the defendant to furnish this plaintiff with a reasonably and adequately heated room in which to work, her health has been impaired as herein set forth, and as she is advised, believes, and so avers, she is permanently injured and damaged; that she has been caused to suffer bodily pain and mental anguish, and still is suffering, and has been made sore, sick, and lame, and been made to suffer, all to her great damage in the sum of $2,500."

Defendant's demurrer to the complaint on the ground that the facts alleged therein are not sufficient to constitute a cause of action, was overruled.

In its answer, the defendant denies all the material allegations of the complaint, and pleads, among other defenses, a release, in writing, executed by the plaintiff on 4 December, 1931, which is as follows:

"NORTH CAROLINA—BUNCOMBE COUNTY.

"Know all men by these presents: That I, Mildred Merrimon, of the aforesaid county and State, for and in consideration of the sum of $150.00 to me in hand paid by the Postal Telegraph and Cable Company of Kentucky, and the Postal Telegraph and Cable Company of

Delaware, have released and do hereby release and discharge the said Postal Telegraph and Cable Company of Kentucky, and the Postal Telegraph and Cable Company of Delaware, and the Postal Telegraph and Cable Company operating in the State of Florida, and any other Postal Telegraph and Cable Company operating anywhere else in the United States of America, from any and all liability on account of a claim which I have against said corporations arising out of an injury received by me at about nine o'clock a.m., on a certain day during the early part of January, 1930, as a result of an alleged assault made upon me by one Arthur Keel, an employee of one of the defendant corporations at Bowling Green, Ky., which said injury is fully set out and described in a complaint filed by me in the general county court of Buncombe County, N. C., on or about the 8th day of October, 1931.

"I do further release and discharge the said Postal Telegraph and Cable Company of Kentucky, the Postal Telegraph and Cable Company of Delaware, and every Postal Telegraph Cable Company operating anywhere in any of the states of the American Union, from all claims of every nature, kind and description, which I have or claim to have against them, up to and including the date of this release.

"This 4th day of December, 1931.

MILDRED MERRIMON.　　(Seal)"

At the trial the issues which arise on the pleadings were submitted to the jury and answered as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint?　Answer: 'Yes.'

"2. Did the plaintiff by accepting employment with the defendant assume the risks incident to heat and cold, as set forth in the defendant's answer?　Answer: 'No.'

"3. Did the plaintiff by her own negligence contribute to her injury? Answer: 'No.'

"4. Is the release set up by the defendant in its second and further answer and defense a bar to the action of the plaintiff?　Answer: 'No.'

"5. What damages, if any, is the plaintiff entitled to recover?　Answer: '$1,050.' "

From the judgment of the general county court that plaintiff recover of the defendant the sum of $1,050, and the costs of the action, the defendant appealed to the Superior Court of Buncombe County, assigning errors in the trial. All the assignments of error were overruled by the judge of the Superior Court. The judgment of the general county court was affirmed and the defendant appealed to the Supreme Court.

*Thomas O. Pangle and J. Scroop Styles for plaintiff.*
*Joseph W. Little and Alfred S. Barnard for defendant.*

CONNOR, J.  In apt time, the defendant requested the judge of the general county court, in writing, to instruct the jury as follows:

"I charge you, gentlemen of the jury, that the release offered by the defendant is a bar to the action of the plaintiff, and it will be your duty to answer the fourth issue 'Yes.' "

This prayer was refused, and on defendant's appeal to the Superior Court, its assignments of error based on such refusal was overruled. In this there was error, and for this error the judgment of the Superior Court affirming the judgment of the general county court must be reversed.

At the trial in the general county court, the plaintiff admitted the execution by her of the release as alleged in the answer of the defendant. She did not allege in her reply or offer evidence at the trial tending to show that the execution of the release was procured by fraud, or that there was any mistake with respect to its contents.  The validity of the release was not challenged by the plaintiff.  The release is therefore binding and conclusive on the plaintiff.  Its language is plain and unequivocal, and clearly shows the intention of the parties.

The cause of action, if any, alleged in the complaint in this action existed to the knowledge of the plaintiff at the time she signed the release.  For a consideration which was satisfactory to her the plaintiff released and discharged the defendant from any and all liability to her not only on the cause of action alleged in the complaint in the action then pending in the general county court of Buncombe County, but also on any claim or claims which she then had against the defendant.  She executed the release, which was drawn by her attorney, after consultation with him, and after full consideration of its contents.  When she executed the release, and delivered it to the defendant, she knew all the facts which she alleges as her cause of action in the complaint in this action. She is and ought to be bound by the terms and provisions of her contract, which are sufficiently broad and comprehensive to include the claim against the defendant on which her cause of action alleged in the complaint in this action is founded.

*Jeffreys v. R. R.,* 127 N. C., 377, 37 S. E., 515, is readily distinguishable from the instant case.  The decision in that case does not sustain the contention of the plaintiff that the release in the instant case is not effective to bar a recovery by her on the cause of action alleged in the complaint in this action.  This will appear from a comparison of the release in that case with the release in the instant case.  The distinction is apparent, and recognizes the principle stated in *Houston v. Trower,* 297 Fed., 558, as follows:

"The language in a release may be broad enough to cover all demands and rights to demand or possible causes of action, a complete discharge

of liability from one to another, whether or not the various demands or claims have been discussed or mentioned, and whether or not the possible claims are all known. One seeking a settlement and release has the right to buy peace from all future contention on then existing claims of every character."

As the release executed by the plaintiff is a bar to her recovery in this action, we do not decide or discuss the many interesting questions presented by other assignments of error relied on by defendant in this appeal.

The action is remanded to the Superior Court of Buncombe County with direction that judgment be entered in accordance with this opinion.

Reversed.

. SCHENCK, J., took no part in the consideration or decision of this case.